IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH FRANKLIN BROWN, JR.     :

                                 :

   v.                     :   Civil Action No. DKC 10-2569
                                     Criminal Case No. DKC 08-0529

                                 :

UNITED STATES OF AMERICA

                                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion filed by Petitioner Joseph Franklin Brown, Jr., to vacate, set aside, or correct sentence. (ECF No. 122). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted in part and denied in part.

I.   **Background**

Petitioner was charged by an indictment filed November 17, 2008, with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (count one); armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) (count two); using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (count three); possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (counts four and seven); evidence tampering, in violation of 18 U.S.C. § 1512(c); (count eight);

and interstate transportation of stolen property, in violation of 18 U.S.C. § 2314 (counts nine and ten). He was appointed counsel pursuant to the Criminal Justice Act.

## A.    Plea Agreement

On April 8, 2009, Petitioner entered into an agreement with the government to plead guilty to counts one through four of the indictment. The parties stipulated that the adjusted offense level applicable to counts one and two was 32 and, as to count three, that "a mandatory minimum sentence of seven years imprisonment . . . [would] run consecutive to any other term[.]" (ECF No. 68 ¶ 6.b). With respect to count four, the parties disagreed regarding application of a sentencing enhancement under the Armed Career Criminal Act ("ACCA"). They agreed, however, that if Petitioner were deemed to be an armed career criminal at the sentencing hearing, "the offense level is 33," and that if he were not "the base offense level is 20" and that "a 4-level enhancement pursuant to [U.S.S.G.] § 2K2.1(b)(6)" would apply. (*Id*. at ¶ 6.c). "Because the counts of conviction group together," the agreement summarized, "the adjusted offense level for Counts One, Two, and Four is 33 if the [Petitioner] is an [a]rmed [c]areer [c]riminal, and 32 otherwise." (*Id*. at ¶ 6.d). Additionally, the government agreed to move for a one-level reduction "in recognition of the [Petitioner's] timely notification of his intention to plead guilty" and not to oppose

a defense request for two-level reduction based on acceptance of responsibility. (*Id*. at ¶ 6.e). Petitioner further acknowledged his understanding that there was no agreement as to the applicable criminal history category, and that "his criminal history could alter his offense level if he is a career offender or if the instant offense was part of a pattern of criminal conduct from which he derived a substantial portion of his income." (*Id*. at ¶ 7).

Notably, for present purposes, the agreement included a limited waiver of the right to appeal:

> The [Petitioner] and [the government] knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range, as follows: with respect to Counts One, Two, and Four, the [Petitioner] waives any right to appeal from any sentence within or below the adjusted base offense level of 29, and [the government] waives any right to appeal from any sentence within or above the adjusted base offense level of 30. With respect to Count Three, both parties waive any right to appeal from imposition of the mandatory minimum seven-year consecutive sentence. Nothing in this agreement shall be construed to prevent either the [Petitioner] or [the government] from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory minimum allowed under the law or that is less than any applicable statutory mandatory minimum provision.

(*Id.* at ¶ 11).

Attached to the agreement was a stipulation of fact in which Petitioner acknowledged that, from 1991 to 2000, he incurred five separate convictions in Maryland state courts for offenses punishable by a term of imprisonment in excess of one year. He further acknowledged that, in the summer of 2008, he possessed multiple firearms despite the fact that he was prohibited from doing so due to his prior felony convictions. During the same time period, Petitioner devised a plan, along with co-defendants Quinita Ennis and William Johnson, to commit the armed robbery of a PNC Bank branch located in California, Maryland, the deposits of which were federally insured. Following a period of surveillance of a bank manager to determine the location of her residence and details of her daily schedule, the plan was executed on September 24, 2008. On that date, Ennis drove Petitioner and Johnson, who were masked and armed with a rifle owned by Petitioner, to the branch manager's home. The two men kidnapped the manager and her two minor children and forced the manager to drive them to the bank in her vehicle. At one point along the route, Petitioner exited the manager's vehicle and was picked up by Ennis, who was trailing in her car. Upon arrival at the bank, Johnson held one of the children hostage and demanded that the manager and other child

enter the bank and return with money. The manager obtained approximately $169,900 from the bank and returned to her vehicle alone, leaving the child that accompanied her inside with another bank employee. Johnson forced her to drive to an elementary school, where she and the remaining child were released. Johnson then abandoned the manager's vehicle in a nearby parking lot and was picked up by Petitioner and Ennis. Later that evening, Petitioner, Ennis, and Johnson, accompanied by a third man, drove to Atlantic City, New Jersey, for purposes of laundering the stolen currency. Thereafter, Petitioner buried the rifle, along with approximately $84,000 in cash, in his backyard and attempted to burn the clothing and apparel worn on the date of the offenses. Following his arrest, Petitioner made voluntary statements to law enforcement officers, acknowledging his role in planning and executing the armed bank robbery.

Petitioner evidenced his agreement to these facts by signing the factual stipulation on April 8, 2009. On the same date, both he and his counsel separately signed the plea agreement, attesting that Petitioner had reviewed the document with counsel, that he understood and agreed to its content, and that he was "completely satisfied with the representation of [his] attorney." (ECF No. 68, at 10).

**B.    Rearraignment**

At his rearraignment on May 13, 2009, Petitioner was placed under oath and expressed his desire to plead guilty to counts one through four.  He acknowledged his understanding of the charges to which he wished to plead guilty; the litany of rights he was required to waive as a result of that plea; and the maximum penalties provided by law for each offense.  As to count four, the court explained:

> The maximum possible penalty provided by law for that offense depends on whether you are considered to be an armed career criminal under 924(e).  If you are, the maximum would be life in prison and there would be a 15 year mandatory minimum sentence . . . and an additional fine of . . . up to $250,000.  If you are not an armed career criminal, then the maximum sentence would be imprisonment for ten years followed by supervised release of up to three years.

(ECF No. 136, at 8).  Petitioner confirmed his understanding of the maximum penalty applicable to each count.  He further acknowledged that the court was not bound by the terms of the plea agreement and that, if his plea were accepted, he would not be permitted to withdraw it regardless of any determination made at sentencing.  The court then reviewed the terms of the plea agreement; the prosecutor read aloud the stipulation of facts; and, after clarifying one point, Petitioner "agree[d] that all

of th[o]se facts are true[.]" (*Id.* at 22).[1] He further agreed that he was "in fact guilty of each of the offenses in Counts One, Two, Three[,] and Four of the Indictment[.]" (*Id.*).

While confirming Petitioner's understanding of the guideline stipulations contained in the plea agreement and that there was no agreement regarding the applicable criminal history category, the court advised that a career criminal designation could affect the applicable guidelines. The following colloquy ensued:

> [DEFENSE COUNSEL]: I think it's accurate to say the parties have looked at this closely and have determined [that Petitioner] is not a career offender.
>
> THE COURT: That's what you both agree or anticipate at this point, but what's important, Mr. Brown, is that I can't tell you right now what I'll find, because I don't have all of the information that I will need. And it's going to be up to me ultimately to decide what all of these factors are, what the guidelines are, what the sentencing range turns out to be. Do you understand that?
>
> [PETITIONER]: Yes, ma'am.

---

[1] The clarification made by Petitioner's counsel, and agreed to by the government, was that it was Johnson, not Petitioner, who possessed and brandished Petitioner's rifle at all times during the course of the robbery. Nevertheless, Petitioner's counsel "acknowledge[d] that Mr. Brown aided and abetted Mr. Johnson's possession and brandishing the weapon on that date" and that "it was possessed . . . by Mr. Brown during the conspiracy leading up to the date of the robbery." (ECF No. 136, at 21).

THE COURT: I know the attorneys do the best job they can, but they can't guarantee anything, okay?

Now, the guidelines calculation, the parties agree that only those matters that are set forth in this agreement should be considered. That is, there are no other offense characteristics, guideline factors or any potential departures or other adjustments that are going to be raised or are in dispute. That means to me that both sides are giving up any right they might otherwise have to have me use other factors or other information in determining what the guidelines are. Do you understand that?

[PETITIONER]: Yes, ma'am. . . .

[THE COURT]: The government is going to recommend a sentence within the guidelines range once I decide what that is. Whatever anybody suggest[s] as a recommendation is only a recommendation. It's up to me to decide what sentence to impose and it can be anything from, if there's an applicable mandatory minimum up to life in prison in this case. Do you understand that?

[PETITIONER}: Yes, ma'am.

(*Id.* at 25-27).

The court next confirmed Petitioner's understanding of the appeal waiver:

THE COURT: In addition to the rights that you give up by pleading guilty, both you and the government are giving up some of your rights to appeal the sentence in this case. Specifically . . . with regard to Counts One, Two and Four, if I sentence you at a level 29 on the advisory guidelines scale or give you less time, you're giving up your right to appeal that sentence. On the other hand, if I sentence you at a level

8

30 or more, the government is giving up its right to appeal.

I guess that means it's the armed career criminal determination that each side is reserving the right to contest on appeal?

[THE GOVERNMENT]: That's correct.

THE COURT: Okay. With regard to Count Three, both sides are giving up their right to appeal if I impose the mandatory minimum seven year sentence. Each party will have the right under Rule 35 to complain if they think I've imposed an illegal sentence. That's going to be difficult, I think, in your case because the maximum, I think, is life on some of these charges, but the government will be able to complain if they think I have failed to impose a mandatory minimum sentence in this case. Do you understand that?

[PETITIONER]: Yes, I do.

(*Id.* at 27-28).

Petitioner acknowledged his understanding of the property he would be required to forfeit and that he would likely be required to make restitution. He agreed that all of the provisions contained in the plea agreement had been discussed; that, aside from the written agreement, no promises had been made to induce his plea; and that he had not been threatened in any way. Petitioner further asserted that he met with his counsel to discuss the guilty plea on numerous occasions; that counsel "answered all of [his] questions"; and that he was "satisfied with the help [counsel] provided." (*Id.* at 31-32).

Having been fully advised of the consequences of his plea,
Petitioner confirmed that it was still his desire to plead
guilty and the court accepted the plea, finding that it was
entered into knowingly, voluntarily, and intelligently, and that
there was an adequate factual basis.

**C.   Sentencing**

No transcript of the December 22, 2009, sentencing hearing
has been prepared, but the court has reviewed notes and listened
to a recording.  Petitioner was not found to be an armed career
criminal; thus, as contemplated by the plea agreement, the
offense level for counts one, two, and four was 32.  After a
three-level reduction for acceptance of responsibility and
timely notification of intention to plead guilty, the adjusted
offense level was 29.  The parties agreed with the
recommendation provided in the pre-sentence report that the
applicable criminal history level was category IV, which yielded
an advisory guideline range of 121 to 151 months for those
counts, in addition to a mandatory minimum seven-year
consecutive sentence for count three.

Petitioner was sentenced to a total term of imprisonment of
228 months, consisting of concurrent sentences of 60 months for
count one, 144 months for count two, and 120 months for count

10

four, followed by the mandatory minimum consecutive term of 84

months for count three.[2]

### D. Postconviction Motions

Petitioner did not file a notice of appeal. On September

16, 2010, however, he filed the pending motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255. (ECF

No. 122).[3] He raises the following grounds:

> (1) that he was "denied his Sixth Amendment
> right to the effective assistance of counsel
> by counsel's failure to file a requested
> appeal" (*id.* at 4);
>
> (2) that "trial counsel was ineffective by
> representing [Petitioner] in a jurisdiction
> where he was not legally authorized to
> practice" (ECF No. 122-1, at 8);
>
> (3) that "trial counsel ineffectively
> assisted [Petitioner] by failing to
> investigate the facts and law and further by
> advising [Petitioner] to plead guilty" (*id.*
> at 9); and
>
> (4) that "[t]he failure of counsel to seek a
> downward departure to reward [Petitioner]
> for accepting responsibility on Counts One,
> Two, and Four of the indictment" constituted
> ineffective assistance (*id.* at 12-13).

In support of his motion, Petitioner separately filed an

affidavit. (ECF No. 123-1). The government was directed to

---

[2] The sentence included a total five-year term of supervised release, plus restitution and special assessment fees.

[3] Due to inconsistent pagination, references to page numbers of Petitioner's § 2255 motion are to those designated by the court's electronic case filing system.

respond, and did so on March 18, 2011. (ECF No. 137).

Petitioner filed reply papers on May 11, 2011. (ECF No. 141).[4]

## II.  Standard of Review

Title 28 U.S.C. § 2255 requires a petitioner asserting
constitutional error to prove by a preponderance of the evidence
that "the sentence was imposed in violation of the Constitution
or laws of the United States, or that the court was without
jurisdiction to impose such sentence, or that the sentence was
in excess of the maximum authorized by law."  While a *pro se*
movant is entitled to have his arguments reviewed with
appropriate deference, *see Gordon v. Leeke*, 574 F.2d 1147, 1151–
53 (4th Cir. 1978), if the § 2255 motion, along with the files
and records of the case, conclusively shows that he is not
entitled to relief, a hearing on the motion is unnecessary and
the claims raised in the motion may be summarily denied. *See* 28
U.S.C. § 2255(b).

## III. Analysis

Claims of ineffective assistance of counsel are governed by
the well-settled standard adopted by the Supreme Court in

---

[4] On July 31, 2012, Petitioner filed a motion for leave to
amend his motion, citing further case law in support of his
claims. (ECF No. 145).  The government does not oppose this
motion and it will be granted.  Additionally, Petitioner filed,
on April 25, 2013, a "motion to advance cause," requesting
prompt decision of his § 2255 motion. (ECF No. 151).  The
filing of the order accompanying the instant opinion will render
this motion moot.  Accordingly, it will be denied.

12

*Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim under *Strickland*, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 687. To demonstrate actual prejudice, Petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the *Strickland* analysis, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688–89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must assess the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. *See Strickland*, 466 U.S. at 697.

A petitioner who pleads guilty has an especially high burden in establishing an ineffective assistance claim. As the Supreme Court has explained, "[t]he plea process brings to the criminal justice system a stability and a certainty that must

not be undermined by the prospect of collateral challenges in cases . . . where witnesses and evidence were not presented in the first place." *Premo v. Moore*, --- U.S. ----, 131 S.Ct. 733, 745–46 (2011). Thus, a petitioner alleging ineffective assistance in the context of a guilty plea must meet a "substantial burden . . . to avoid the plea[.]" *Id*. at 746.

### A.    Failure to Appeal

Petitioner initially faults his trial counsel for failing to file a notice of appeal. In the affidavit accompanying his § 2255 motion, he asserts that he "requested [counsel] to appeal, understood that an appeal would be filed, and subsequently learned that no appeal had been filed." (ECF No. 123-1 ¶ 10). In response, the government argues, without citation to any authority, that "[b]ecause [Petitioner] waived his right to appeal his conviction, he cannot now collaterally attack this sentence by claiming his counsel was ineffective for failing to file an appeal." (ECF No. 137, at 4).

The government is mistaken. Initially, Petitioner did not waive his right to appeal "his conviction," as the government now asserts. Rather, he waived his right to appeal his sentence under certain circumstances. (*See* ECF No. 68 ¶ 11). *See United States v. Poindexter*, 492 F.3d 263, 267 (4ᵗʰ Cir. 2007) ("the district court incorrectly observed that Poindexter's appeal waiver covered an appeal of his conviction, as opposed to just

an appeal of his sentence"); *Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000) (finding "the government mischaracterize[d] the scope of the waiver at issue" where the defendant "only agreed not to contest his sentence" and "the plea agreement [was] silent as to a waiver of any challenge to his underlying conviction" (internal emphasis removed)).

In the Fourth Circuit, moreover, "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." *Poindexter*, 492 F.3d at 273. Like the instant case, *Poindexter* involved a defendant who signed a plea agreement containing explicit limitations on the right to appeal. After a sentence within the guidelines was imposed and no appeal was noted, the defendant filed a § 2255 motion alleging, in part, that "he was denied the effective assistance of counsel when his attorney failed to file a timely notice of appeal after he unequivocally instructed his attorney to do so." *Poindexter*, 492 F.3d at 266. That motion was denied by the district court, without an evidentiary hearing, on the basis that the defendant could not prevail because he "was sentenced within the sentencing range established by the Sentencing Guidelines and, therefore, any challenge to his sentence would fall under the appeal waiver contained in the plea agreement." *Id*. at 267.

In vacating the district court's ruling, the Fourth Circuit relied principally on *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), for the propositions that "an attorney who disregards a defendant's specific instruction to file a timely notice of appeal acts in a professionally unreasonable manner" and that "a presumption of prejudice applies when an attorney's deficient performance deprives the defendant of an appeal." *Poindexter*, 492 F.3d at 268 (citing *Flores-Ortega*, 528 U.S. at 477, 483). Thus, in the Fourth Circuit's view, "[o]nce Poindexter unequivocally instructed his attorney to file a timely notice of appeal, his attorney was under an obligation to do so"; by failing to do so, "his attorney acted in a professionally unreasonable manner"; and "[b]ecause his attorney's unprofessional conduct resulted in Poindexter losing his appellate proceeding, he [] established prejudice under *Flores-Ortega* as well." *Id.* at 269; *see also United States v. Wright*, --- Fed.Appx. ----, 2013 WL 4258360, at *1 (4th Cir. Aug. 12, 2013) ("counsel's failure to file a notice of appeal as directed constitutes per se ineffective assistance") (citing *United States v. Peak*, 992 F.2d 39, 41-42 (4th Cir. 1993)).[5]

_____

[5] The Fourth Circuit's position is in accord with the majority of circuit courts to have addressed this issue. *See Campbell v. United States*, 686 F.3d 353, 359 (6th Cir. 2012); *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007); *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007); *Campusano v. United States*, 442 F.3d 770, 774 (2d Cir. 2006);

Here, the record reflects that Petitioner unequivocally asked his attorney to file a notice of appeal and that his counsel failed to do so. Under *Poindexter*, that failure amounts to constitutionally ineffective assistance of counsel. The government's contention that any decision not to file an appeal "was objectively reasonable" because an appeal "would have violated [Petitioner's] plea agreement and controverted [his] express intent when he agreed to accept [its] terms" (ECF No. 137, at 4) is irrelevant. Moreover, Petitioner is not required to demonstrate prejudice by showing, for example, the existence of a non-frivolous ground for appeal that would have been brought "but for" his counsel's deficient performance.

---

*Gomez-Diaz v. United States*, 433 F.3d 788, 793 (11th Cir. 2005); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005); *United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005). A minority of circuits have held that the failure to file a notice of appeal upon request does not constitute ineffective assistance of counsel *per se*. *See Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008) (holding that, absent a showing of a non-frivolous issue that could have been raised on appeal, "counsel should protect the client's interest in retaining the benefit of the plea bargain"); *United States v. Mabry*, 536 F.3d 231, 241 (3d Cir. 2008) (finding that a habeas petitioner cannot establish an ineffective assistance claim "unless the waiver fails to pass muster under an entirely different test: one that examines its knowing and voluntary nature and asks whether its enforcement would work a miscarriage of justice"); *see also Agosto v. United States*, Nos. 04-cr-10336-NMG-5, 09-cv-11610-NMG, 2012 WL 3518130, at *2 (D.Mass. Aug. 15, 2012) (adopting the minority view and noting that "[t]he First Circuit is the only circuit court not to have opined on the issue.").

As Justice Sotomayor, then sitting on the Second Circuit, explained in *Campusano*, 442 F.3d at 777:

> [A]pplying the *Flores-Ortega* presumption to post-waiver situations will bestow on most defendants nothing more than an opportunity to lose. There will not be many cases in which a defendant whose attorney fails to file a notice of appeal after a plea agreement and a waiver of appeal, and whose hypothetical appeal seems meritless during ineffective-assistance habeas review, eventually prevails. But rare as they might be, such cases are not inconceivable, and we do not cut corners when Sixth Amendment rights are at stake. A defendant who executes a waiver may sign away the right to appeal, but he or she does not sign away the right to the effective assistance of counsel.

For these reasons, Petitioner is entitled to relief in the form of a belated appeal. *See United States v. Newell*, Civ. No. AMD 04-3471, Crim No. AMD 00-0146, 2005 WL 1242064, at *1 (D.Md. May 25, 2006) (Davis, J.) (granting a belated appeal where, as here, "the government's efforts to obtain an affidavit from [the petitioner's] counsel [were] rebuffed"); *see also Gordon-Bey v. United States*, Civ. No. RDB-11-2760, Crim. No. RDB-08-0123, 2013 WL 1431658, at *1 (D.Md. Apr. 8, 2013) (granting belated appeal, without a hearing, where the government did not dispute petitioner's allegation that his counsel failed to comply with request to file notice of appeal); *cf. United States v. Wright*, No. 12-7468, 2013 WL 4258360, at *1 (4th Cir. Aug. 12, 2013) (finding district court erred in failing to conduct an

evidentiary hearing where "conflicting affidavits" showed a dispute as to whether petitioner asked his counsel to file a notice of appeal).[6]

**B.    Unauthorized Practice**

Petitioner next contends that his trial counsel rendered ineffective assistance by "representing [him] in a jurisdiction where he was not legally authorized to practice." (ECF No. 122-1, at 8).    According to Petitioner, the fact that his counsel was not barred in Maryland resulted in prejudice because it precluded him from collaterally attacking a prior state court conviction in an effort to avoid the armed career criminal designation.[7]

As noted, however, Petitioner did avoid the armed career criminal designation; in fact, he received the lowest possible guidelines range contemplated under the plea agreement. Moreover, he acknowledged five prior state court convictions in the stipulation of facts attached to the plea agreement; he

---

[6] The government asserts in its opposition papers that it contacted Petitioner's trial counsel, who "declined to comment on this [r]esponse citing attorney-client privilege concerns." (ECF No. 137, at 8 n. 2).

[7] Petitioner further suggests that the alleged fact that his counsel was not barred in Maryland "rendered him ineligible to negotiate a contract, such as the plea agreement entered in this case."    (ECF No. 122-1, at 12).    Assuming that Petitioner's trial counsel was not barred in Maryland, however, this had no bearing on his ability to practice in federal district court, and publicly available records reflect that he has been a member of the district court bar since April 2008.

confirmed at rearraignment that those facts were true; and he does not dispute the calculation of his criminal history category, nor could he under these circumstances. Thus, Petitioner cannot show prejudice owing to his counsel's failure to challenge any prior state court conviction, and his ineffective assistance claim in this regard cannot prevail.

### C.  Failure to Investigate

Petitioner further alleges ineffective assistance due to his counsel's failure "to investigate the facts and law and further by advising [him] to plead guilty." (ECF No. 122-1, at 9). He asserts that his counsel "was well aware that [he] wanted to proceed to a jury trial on [c]ount [t]hree, and further [] advised [Petitioner] that he . . . could win [on] that count," but "because of the uncertainty of whether [Petitioner] qualified for ACCA treatment, [c]ounsel told [him] that he had to plead guilty to all four counts, even though he was not guilty of [c]ount [t]hree." (*Id*. at 10). According to Petitioner, had his counsel conducted a proper investigation of his prior convictions, he would have known Petitioner would not qualify for the armed career criminal enhancement and Petitioner "would have insisted on going to a jury trial." (*Id*. at 11).

This argument is belied by the record. Absent "extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a

district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005); *see also United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) ("when a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process"); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy").

Petitioner has not presented any extraordinary circumstances warranting relief. The Rule 11 colloquy demonstrates that he was repeatedly advised of a disagreement between the parties as to application of the ACCA. Indeed, this disagreement was spelled out in the plea agreement itself, which contemplated different offense levels and corresponding rights to appeal based on whether the armed career criminal designation were found to apply. The disagreement was explained to Petitioner, in no uncertain terms, by the court at rearraignment; in response, his counsel stated that "the parties ha[d] looked at [the ACCA issue] closely and ha[d] determined [that Petitioner] is not a career offender" (ECF No. 136, at 25); and Petitioner confirmed, under oath, that he understood

the disagreement and that it was, nevertheless, his desire to plead guilty. Moreover, he does not suggest what it is that his counsel would have discovered had he conducted an adequate investigation – nor that postconviction review of his prior state court convictions was still available – and his *post hoc*, conclusory allegations are insufficient to establish any deficiency in his counsel's performance.

In any event, the premise underlying this ground – *i.e.* that Petitioner would have been likely to prevail at trial on count three, alleging violation of 18 U.S.C. § 924(c), because it was his co-defendant, rather than he, who brandished the firearm during the kidnapping and robbery – is fundamentally flawed.[8] "The Fourth Circuit recognizes the full breadth of the

_____

[8] Title 18, section 924(c), provides, in relevant part:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –

conspiracy doctrine described in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)," and "[t]hat doctrine makes conspirators liable for all reasonably foreseeable acts of their co-conspirators done in furtherance of the conspiracy." *United States v. Cummings*, 937 F.2d 941, 944 (4th Cir. 1991). Here, there is no question that Petitioner and his co-conspirators planned to use a firearm in the kidnapping of the bank manager to facilitate their robbery of the bank where she worked; indeed, Petitioner provided the weapon in question. Under these circumstances, the fact that he may not have personally brandished the weapon during the kidnapping and robbery is irrelevant. Because the brandishing by Johnson was both reasonably foreseeable and done in furtherance of the conspiracy, Petitioner was guilty of violating 18 U.S.C. 924(c)(1)(A)(ii), as he acknowledged, under oath, at the Rule 11 hearing.[9]

---

    (i) be sentenced to a term of imprisonment of not less than 5 years; and

    (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years.

18 U.S.C. 924(c)(1)(A).

[9] Petitioner further asserts, in purely conclusory fashion, that his counsel's failure to request severance as to count three "was both unreasonable and prejudicial" in that it "coerced [him] into pleading guilty to an offense for which he/is was actually innocent[.]" (ECF No. 122-1, at 11).

**D.    Failure to Seek Downward Departure**

Finally, Petitioner faults his trial counsel for failing to seek a downward departure to reward [him] for accepting responsibility on Counts One, Two, and Four of the indictment[.]" (ECF No. 122-1, at 12).  He cites *United States v. Rodriguez*, 64 F.3d 638 (11th Cir. 1995), for the proposition that "the district courts [have authority] to grant a downward departure from the statutory maximum penalty imposed pursuant to U.S.S.G. § 5G1.1(a),"[10] and argues that, "[h]ad counsel made such a[n] argument . . . there is a reasonable probability that the outcome would have been different." (ECF No. 122-1, at 12).

Petitioner fails to explain how § 5G1.1(a) applies to counts one, two, and four, for which he received concurrent sentences.  While the statutory maximums for counts one and four were below the guidelines, the maximum for count two was 25 years.  Thus, the guideline range of 121-151 months was not above the statutory maximum for the combined offenses, and there cannot have been any prejudice.  Furthermore, the Fourth Circuit has not adopted the reasoning of *Rodriguez.*  *See United States v. Fuentes*, 51 Fed.Appx. 378 (4th Cir. 2002).

---

Petitioner cannot show prejudice resulting from any deficiency in this regard, however, because there was overwhelming evidence of his guilt as to count three.

[10] That section applies when a statutory maximum is lower than the guideline range.

Furthermore, Petitioner ignores that, as part of the plea agreement, he "agree[d] that with respect to the calculation of the . . . advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Guidelines will be raised or are in dispute." (ECF No. 68, at 6). At rearraignment, moreover, Petitioner specifically acknowledged his understanding that, pursuant to the agreement, "there [were] no other offense characteristics, guideline factors or any potential departures or other adjustments that [were] going to be raised or [were] in dispute." (ECF No. 136, at 26). Thus, assuming Petitioner might have otherwise been eligible for some departure, his counsel was precluded from raising that argument by the plea agreement. Accordingly, he could not have rendered ineffective assistance by failing to do so.

E.   **Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (internal marks omitted).

Upon review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, it will decline to issue a certificate of appealability on those issues which have been resolved against Petitioner.

## IV. Conclusion

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct sentence will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge